UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ROGER LAWSON                              :
                                          :
     v.                                   :   No. 3:07CV1270(AHN)
                                          :
EAST HAMPTON PLANNING & ZONING            :
COMMISSION                                :

## RULING ON MOTION TO DISMISS

Roger Lawson ("Lawson"), the plaintiff in this action under 42 U.S.C. § 1983, alleges that the defendant, the East Hampton Planning & Zoning Commission ("P&Z"), deprived him of his property rights without substantive and procedural due process when it denied his application for a special permit to continue a pre-existing earth material operation on his property.

The P&Z has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Lawson's claims are barred by the statute of limitations and res judicata/collateral estoppel. The P&Z also maintains that this action must be dismissed under the ripeness doctrine. For the following reasons, the motion is GRANTED.

## FACTS

Lawson is the owner of property located at 49 Waterhole Road in East Hampton, Connecticut. Lawson's predecessor-in-title operated an earth material operation on the property. Lawson alleges that his predecessor's activities constitute a non-conforming pre-existing use that has never been abandoned or

discontinued.  In February 2004 Lawson filed an application with the P&Z for a special permit to excavate earth material from approximately nine acres of the property.  The P&Z conducted hearings on Lawson's application and on August 4, 2004 denied the application.  Notice of the P&Z's decision was published in the Middletown Press on August 7, 2004.  Lawson filed an administrative appeal of the P&Z's decision to the Connecticut Superior Court on August 19, 2004.  He claimed that the P&Z abused its discretion and acted arbitrarily and capriciously in denying his application by, <u>inter alia</u>, failing to consider the relevant factors in determining if a special permit should be granted, closing part of the public hearing and otherwise engaging in unauthorized procedures, and not timely providing him with a copy of its decision.

On December 13, 2005, the Connecticut Superior Court ruled that (1) although Lawson had not asserted a claim before the P&Z that his use of the property for an earth material operation was a protected nonconforming use, the evidence before the P&Z was nonetheless insufficient to establish such a non-conforming use, (2) an earth material operation was a permitted use in the zone that was subject to regulation by special permit, (3) the P&Z denied Lawson's special permit application based on the requirements for a special permit, not on the grounds that the use was prohibited in the zone, (4) the P&Z's actions complied

with the requirements of fundamental fairness, (5) the P&Z's decision was supported by substantial evidence, and (7) the denial of the special permit limited the potential value of the property as a gravel bank, but the denial of a single application was not sufficient to prove a taking in the absence of sufficient proof that the P&Z would not allow any reasonable use of his property.

Lawson filed this § 1983 action on August 21, 2007 alleging procedural and substantive due process violations based on arbitrary and capricious conduct of the P&Z in denying his permit application. The P&Z maintains, <u>inter</u> <u>alia</u>, that the court lacks subject matter jurisdiction and that the action is barred by the statute of limitations.

STANDARD

A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate it. In determining whether subject matter jurisdiction exists, a district court may refer to evidence outside the pleadings. <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. <u>Malik v. Meissner</u>, 82 F.3d 560, 562 (2d Cir. 1996). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences

favorable to the party asserting it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (quoting APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003)).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded facts alleged in the complaint as true, draw all reasonable inferences from those facts in the light most favorable to the plaintiff, and construe the complaint liberally. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). The district court may dismiss a claim only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1960 (2007); see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (construing Bell Atlantic not as requiring a universal standard of heightened fact pleading, but a flexible plausibility standard). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)). The issue is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims. When ruling on a motion to dismiss, the court may consider the allegations in the complaint, any

documents attached to the complaint or incorporated by reference in the complaint, and other facts of which judicial notice may be taken. Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## DISCUSSION

In response to the P&Z's claim that this action is time barred, Lawson argues that it was timely filed within three years of the date it became ripe for adjudication. According to Lawson, this § 1983 claim only became ripe on December 15, 2005 when the state superior court decided his administrative appeal of the P&Z's decision. In reply, the P&Z not only disputes Lawson's ripeness claim, but further asserts that this action is not ripe under the two-prong test enunciated by the Supreme Court in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), because Lawson did not obtain a final decision from the East Hampton zoning authority and did not seek compensation in state court.[1]

Because the ripeness requirement implicates the court's subject matter jurisdiction, the court is obligated to consider

---

[1] Challenges to the court's subject matter jurisdiction may be raised at any time. It was thus appropriate for the P&Z to raise the ripeness issue in its reply brief. E.g., Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 254 (2d Cir. 1991) ("The lack of subject matter jurisdiction may be raised at any time, by the parties, or by the court sua sponte.").

-5-

it first.  Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005); see Dougherty v. Town of North Hempstead, 282 F.3d 83, 89 (2d Cir. 2002) (stating that the purpose of the ripeness requirement is "to ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution").  To establish jurisdiction in this land use case, Lawson has the "high burden of proving [there is] a final, definitive position from a local authority" as to how he can use his property.  Murphy, 402 F.3d at 347.

I. Ripeness

In Williamson, the Supreme Court set forth the test for determining whether land use cases are ripe for adjudication. Specifically, the Court held that § 1983 cases involving the application of zoning ordinances and regulations to private property are not ripe until (1) the government entity charged with implementing the relevant regulations has reached a final decision regarding their application to the property at issue, and (2) if a taking claim is alleged, the property owner has utilized the state-law procedures for obtaining just compensation.  Williamson, 473 U.S. at 186.  These final decisions are needed so that a federal court, in adjudicating a § 1983 challenge to the constitutionality of a local land use decision, will have the benefit of a fully developed record, a

precise demonstration of how local regulations would be applied to the particular property, and knowledge of whether a variance or approval of alternative plans could provide the relief the landowner seeks. Murphy, 402 F.3d at 348. In the absence of a final, definitive ruling that inflicts an actual, concrete injury on the property owner, the court in a § 1983 action cannot determine whether the property owner was deprived of property or whether the government's conduct was arbitrary and capricious. Southview, 980 F.2d at 97. Moreover, the final decision requirement "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." Murphy, 402 F.3d at 348.

The Second Circuit has held that both prongs of the Williamson test apply in substantive due process cases premised on a theory that the state has taken its police powers too far in regulating land, i.e., so-called "regulatory takings" cases. Southview Assoc., Ltd. v. Bongartz, 980 F.2d 84, 96 (2d Cir. 1992). However, in § 1983 actions such as this one which alleges a violation of procedural and substantive due process premised on arbitrary and capricious government conduct, only the final decision prong of the Williamson ripeness test applies. Dougherty, 282 F.3d at 84; Southview, 980 F.2d at 97. The second prong, which requires a claimant to seek compensation in state court, is not applicable to these due process claims. Southview,

980 F.2d at 97. Nonetheless, even when, as here, only the first prong applies, unless a landowner has received a final decision from the initial decisionmaker regarding the application of zoning regulations to his property, his constitutional challenge is not ripe for adjudication. E.g., Port Clinton Assoc. v. Bd. of Selectmen, 217 Conn. 588, 607 (1991).

As a general rule, the finality requirement conditions federal court review of most zoning decisions on a landowner's submission of at least one alternative development proposal or one meaningful application for a variance, unless doing so would be futile. Williamson, 473 U.S. at 193 (noting that a claimant would generally be required to seek a variance which would result in a conclusive determination for purposes of the final prong requirement); Port Clinton, 217 Conn. at 607 (holding that in most cases a property owner must do more than submit one plan to an agency to establish that the agency's decision is final for ripeness purposes); Murphy, 402 F.3d at 348-49 (noting that the requirement of at least one meaningful variance application as a prerequisite to a § 1983 action enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible). But to satisfy the finality requirement a property owner does not have to pursue remedial procedures that merely review the propriety of the initial decisionmaker's action. Williamson, 473 U.S. at 193 (holding

that a claimant is not required to appeal a zoning commission's decision to a zoning board of appeals if that board would merely review the zoning commission's action); Port Clinton, 217 Conn. at 607 (noting that the administrative appeals process under Conn. Gen. Stat. § 8-8 is precisely the type of remedial measure that a claimant need not pursue to satisfy Williamson's finality requirement in a § 1983 case).

Determining whether Williamson's finality requirement has been met is not mechanical, but requires a fact-specific inquiry. Murphy, 402 F.3d at 348. The procedure a property owner must pursue before he has a final decision depends on the specific regulations at issue. Port Clinton, 217 Conn. at 606. For instance, in Connecticut, if a property owner's land use application is rejected by the zoning commission, the owner may apply to the zoning board of appeals for a variance or an exception. See Conn. Gen. Stat. § 8-6. The zoning commission's denial of the landowner's application, even if the landowner appealed the decision to the zoning board of appeals or the superior court, is not "a final decision by the initial decisionmaker." In most instances the landowner only has a final decision for ripeness purposes if he obtains a decision from the zoning board of appeals on an application for a variance or exception. Port Clinton, 217 Conn. at 606-07; see also Williamson, 473 U.S. at 190, 193 (holding that the failure to

pursue a variance prevents a federal challenge to a local land use decision from becoming ripe and leaves undetermined the permitted use of the property).

In this case, neither the P&Z's denial of Lawson's special permit application nor the Connecticut Superior Court's decision on Lawson's administrative appeal constitute a final decision under Williamson.  Lawson would have the requisite final decision only if he sought a variance or exception from the zoning board of appeals[2] or submitted an alternative plan for using his property.  See e.g., Port Clinton, 217 Conn. at 607; Celentano v. City of West Haven, 815 F. Supp. 561, 569 (D. Conn. 1993). Because Lawson did not do so, he has not satisfied Williamson's final decision requirement and his substantive and procedural due process claims in this action are not ripe for adjudication.  See Dougherty, 282 F.3d at 88-89 (holding that the Williamson test applies to substantive and procedural due process claims).

This conclusion is not altered by Lawson's artfully drafted, but factually misleading allegation in the complaint in this action that his predecessor-in-title's earth material operation on the property constituted a prior nonconforming use that had

---

[2]A variance permits a property owner who has unusual or exceptional circumstances to use his property in a manner that is otherwise prohibited by the zoning ordinances.  Bloom v. Zoning Bd. of Appeals, 233 Conn. 198, 206-07 (1995).

-10-

never been abandoned.³  Indeed, if Lawson had obtained a final decision from the East Hampton zoning authority as to whether or not he had a legal nonconforming use to operate an earth material operation on the property, then the P&Z's denial of his special permit application to conduct that activity on his property would be a final decision that satisfied Williamson's ripeness requirement even though he did not seek a variance or exception or propose an alternative plan.  See Gavlak v. Town of Sommers, 267 F. Supp. 2d 214, 220-21 (D. Conn. 2003) (holding that the landowner's § 1983 due process claim based on arbitrary government decision-making was ripe for adjudication and satisfied the first prong of Williamson because the zoning board, which had the final word regarding the enforcement of zoning regulations, determined that the landowner's use of the property did not constitute a nonconforming use); Norton v. Town of Islip,

---

³A nonconforming use is a use that is prohibited by the zoning regulations, but is permitted because it existed at the time the zoning regulation that made the use nonconforming was enacted. Horace v. Zoning Bd. of Appeals, 85 Conn. App. 162, 165 n.5 (2004).  It is a vested, constitutionally protected property right that a municipality, by statute, does not have the discretion to diminish or prohibit.  See Petruzzi v. Zoning Bd. of Appeals, 176 Conn. 479, 483-84 (1979); see Conn. Gen. Stat. § 8-2(a) (stating that municipal zoning regulations "shall not prohibit the continuance of any nonconforming use ... existing at the time of the adoption of such regulations").  A municipality may, however, regulate a preexisting nonconforming use under its police powers.  Ammirata v. Zoning Bd. of Appeals, 65 Conn. App. 606, 613-15 (2001), rev'd on other grounds, 264 Conn. 737 (2003); Taylor v. Zoning Bd. of Appeals, 65 Conn. App. 687, 697-98 (2001) (holding that requiring a landowner to obtain a permit for a quarry is a reasonable regulation of a preexisting nonconforming use under the town's police powers).

239 F. Supp. 2d 264, 269 (E.D.N.Y. 2003) (holding that a landowner's substantive due process claim was not ripe because he had not obtained a final decision from the zoning board establishing his nonconforming use).

However, the undisputed facts[4] establish that Lawson never sought a determination from the P&Z as to whether he had such a legal nonconforming use and the P&Z never ruled one way or the other on the issue.[5] Accordingly, despite the allegation in the

---

[4] The court is entitled to consider and rely on matters outside the complaint to determine the ripeness issue because it impacts the court's subject matter jurisdiction. E.g., Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

[5] According to the complaint in Lawson's administrative appeal from the P&Z's denial of his special permit application and the superior court's decision in that appeal, Lawson never applied to the P&Z for a determination that his predecessor-in-title's earth material operation constituted a preexisting nonconforming use that had never been abandoned. Lawson presented no evidence to the P&Z to establish such a nonconforming use, and the P&Z never decided whether or not Lawson had a nonconforming use. Rather, Lawson only applied to the P&Z for a special permit pursuant to East Hampton Zoning Regulations §§ 26 and 29 to excavate earth materials from nine acres of his property. Although Lawson asserted a nonconforming use claim in the administrative appeal, the superior court noted that the record revealed that Lawson had not presented the claim to the P&Z and that the P&Z had not decided it. And even though the superior court concluded that the evidence before the P&Z was not sufficient to establish such a nonconforming use, its decision is not a final decision by the initial decisionmaker for ripeness purposes. Moreover, as the Connecticut Supreme Court held under similar circumstances, because the P&Z made no factual findings concerning Lawson's nonconforming use claim and rendered no decision on that claim, the record before the superior court was inadequate for it to review Lawson's nonconforming use claim. Wood v. Zoning Bd. of Appeals, 258 Conn. 691, 709 (2001). The local zoning authority is required in the first instance to determine whether a landowner's use constitutes a legal

-12-

complaint, in the absence of a final decision by the P&Z on the issue of whether Lawson's predecessor-in-title's earth material operation on the property constituted a preexisting nonconforming use that Lawson was entitled to continue, Lawson's § 1983 claim based on the P&Z's denial of his special permit application to operate an earth material operation on his property is not a final decision that is ripe for review in this court under the first prong of Williamson. Williamson, 473 U.S. at 189 (noting that because the landowner had not done everything possible to resolve the conflict with the commission before bringing a § 1983 case, his claim was not ripe). Accordingly, this court does not have subject matter jurisdiction to adjudicate Lawson's § 1983 claim.

## II. Statute of Limitations

Even if Lawson's § 1983 substantive and procedural due process claims were ripe under Williamson and the court had subject matter jurisdiction, dismissal of this action would be appropriate because it is time barred under Connecticut's three-year statute of limitations. Lawson's arguments that the statute of limitations was tolled during his administrative appeal and that this action was timely filed within three years of the

---

nonconforming use and it was not proper for the superior court in an administrative appeal to consider that issue. Id. Accordingly, the superior court's finding on the nonconforming use issue is of no effect and is not a final decision as required by Williamson.

superior court's decision in that appeal are without merit.

The statute of limitations for § 1983 actions is governed by state law. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). Under Connecticut law, the statute of limitations for § 1983 cases is the three-year period set forth in Conn. Gen. Stat. § 57-577. Orticelli v. Powers, 197 Conn. 9, 16 (1985).

Federal law, not state law, determines when a cause of action accrues under § 1983. Wallace v. Kato, --- U.S. --, 127 S. Ct. 1091, 1095 (2007). Under federal law, a claim accrues once the "plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002). Put another way, a claim accrues when "the plaintiff can file suit and obtain relief." Wallace, 127 S. Ct. at 1095 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)).

In addition to borrowing state statutes of limitations for § 1983 actions, federal courts also borrow state tolling rules, Pearl, 296 F.3d at 81 (citing Board of Regents v. Tomanio, 446 U.S. 478, 484-86 (1980)); Keating v. Carey, 706 F.2d 377, 381-82 (2d Cir. 1983), unless doing so would "defeat the goals of the federal statutes at issue." Hardin v. Straub, 490 U.S. 536, 539 (1989); cf. Meyer v. Frank, 550 F.2d 726, 729 (2d Cir. 1977) ("[i]t is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law in

appropriate circumstances," i.e., where application of the borrowed state statute of limitations would frustrate the policy underlying the federal cause of action asserted). Under Connecticut tolling rules, the statute of limitations is not tolled during an administrative appeal. <u>Perzanowski v. City of New Britain</u>, 183 Conn. 504, 506 (1981) ("So long as the pendency of the prior action does not prevent enforcement of the remedy sought in the later action, the pendency of the first action will not toll the statute of limitations for the second action."). Indeed, under both federal and Connecticut law, a plaintiff is not required to exhaust administrative remedies before bringing a § 1983 action. <u>Patsy v. Florida Bd. of Regents</u>, 457 U.S. 496 (1982); <u>Port Clinton</u>, 217 Conn. at 599.

Based on these well-settled principles, Lawson's § 1983 claim accrued when he knew or had reason to know of the P&Z's denial of his application for a special permit, i.e., on August 4, 2004, the day the P&Z denied his application, or by August 7, 2004, the day he alleges the P&Z's decision was published in the Middletown Press, or at the latest by August 19, 2004, the day he filed the administrative appeal. The fact that he took an administrative appeal of the P&Z's denial of his special permit application has no bearing on the accrual date of his § 1983 action. <u>See</u> <u>Port Clinton</u> 217 Conn. at 607 (holding that a remedial administrative appeal is "precisely the type of procedure that a claimant under 42 U.S.C. § 1983 need <u>not</u> pursue

as a prerequisite to filing his suit").

Further, the statute of limitations on Lawson's § 1983 claim was not tolled while he litigated the administrative appeal in superior court. Williams v. Walsh, 558 F.2d 667, 673-74 (2d Cir. 1977). And, because the administrative appeal was purely remedial and the superior court's decision was not a final decision by the initial decisionmaker, the date of the superior court's decision also has no bearing on the accrual of his § 1983 action or on the issue of whether the P&Z's denial of his special permit application was a final agency decision. See Wiltzius v. Town of New Milford, 453 F. Supp. 2d 421, 430 (D. Conn. 2006); see also Cumberland Farms, Inc. v. Groton, 247 Conn. 196, 205 (1998).

Indeed, Lawson's claim that his § 1983 action was not ripe until the conclusion of his administrative appeal confuses exhaustion with ripeness. Finality of administrative action is conceptually distinct from the doctrine of exhaustion of administrative remedies. "While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate."

Williamson 473 U.S. at 193.  The issue of ripeness under Williamson has no bearing on whether this action was timely filed under the applicable statute of limitations.

Because Lawson did not file this § 1983 due process action until August 21, 2007, more than three years after it accrued, it is time barred under the three-year limitations period of Conn. Gen. Stat. § 57-577.

## CONCLUSION

For the foregoing reasons,[6] the defendant's motion to dismiss [doc. # 14] is GRANTED.  The Clerk is directed to close this case.

SO ORDERED this 22nd day of September, 2008 at Bridgeport, Connecticut.

```
                    /s/_____
                         Alan H. Nevas
                    United States District Judge
```

---

[6] Because the court dismisses this action on the grounds of subject matter jurisdiction/statute of limitations, there is no need to consider the defendant's claims of res judicata and collateral estoppel.